IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| ACS PARTNERS, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) CIVIL ACTION NO. 3:09-cv-464 |
| AMERICON GROUP, INC., and MICHAEL CAPUTO, | ) ) ) |
| Defendants. | ) ) |

## AMENDED COMPLAINT

COMES NOW ACS Partners, LLC, Plaintiff in the above-styled action, and files this Amended Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure against Defendants Americon Group, Inc. ("Americon") and Michael Caputo ("Caputo") (collectively, "Defendants") for both injunctive relief and damages. ACS' claims arise from Defendants' violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*, the breach by Defendant Caputo of the Non-Compete and Confidential Disclosure Agreements he executed while employed by ACS, as well as other unlawful acts of Defendants as set forth herein.

## PARTIES

1. Plaintiff ACS Partners, LLC ("ACS") is a Georgia limited liability company with its principal place of business located at 312 South Atlanta Street, Roswell, Georgia 30075. ACS is engaged in the business of building construction and renovation in the States of Florida, Georgia, Texas, Mississippi, Alabama, Louisiana, Arkansas, Ohio, Michigan, Nevada, Pennsylvania, North Carolina and South Carolina. Plaintiff is authorized to conduct business in the State of North Carolina.

2. Defendant Americon is a Florida corporation with its principal place of business

in Florida. Defendant regularly conducts business in North Carolina. Americon may be served through its registered agent in North Carolina, Michael Caputo, located at 10051 Caldwell Depot Road, Cornelius, NC 28031.

3. Defendant Michael Caputo ("Caputo") is a former employee of ACS and, upon information and belief, a resident of Mecklenburg County, North Carolina. Caputo may be served at his personal residence located at 10051 Caldwell Depot Road, Cornelius, NC 28031.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction as Plaintiff asserts civil claims arising under the Constitution and laws of the United States. Specifically, Plaintiff alleges violations of 18 U.S.C. § 1030, *et seq.*

5. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction as complete diversity of citizenship exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

6. Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. § 1391. A substantial part of the events giving rise to Plaintiff's claims occurred in Mecklenburg County, North Carolina.

7. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's additional claims arising under North Carolina state law for, *inter alia*, breach of contract, tortious interference with prospective advantage, tortious interference with contract, violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, misappropriation of trade secrets in violation of N.C. Gen. Stat. § 66-152, *et seq.*, unjust enrichment, civil conspiracy, conversion, punitive damages, and injunctive relief.

## FACTUAL ALLEGATIONS

8. ACS is engaged in the construction and renovation business, and it assists both commercial and residential property owners with their building construction needs. To ensure the success of its business, ACS engages in significant effort and incurs significant expense in marketing its services and developing its customers. ACS maintains a database of its customers which it considers confidential and proprietary. ACS has established measures to ensure that its customer database and other proprietary information are kept confidential and not disclosed.

9. ACS also endeavors to perform the highest quality work for its customers and has developed a reputation in the commercial industry for good performance. ACS has devoted substantial resources to developing and maintaining the customer good will it has established.

10. On December 17, 2007, ACS offered Caputo the position of Regional Manager for North and South Carolina, which Caputo accepted. In that position, Caputo was responsible for primarily selling ACS' services to existing and prospective customers primarily in North and South Carolina, although Caputo would travel to other States on ACS' behalf to either analyze prospective projects or entertain ACS' customers. Caputo was also responsible for taking all required steps to ensure ACS' customers were satisfied with ACS' services and for establishing good will on behalf of ACS with those customers.

11. At the inception of Caputo's employment with ACS, Caputo executed both a Non-Compete Agreement and a Confidential Disclosure Agreement which are dated December 17, 2007, and attached hereto and incorporated herein as Exhibits 1 and 2, respectively. As part of his job duties, Caputo was provided with information owned by ACS which ACS considers to be confidential, proprietary and trade secret information, including but not limited to ACS' pricing methodology.

12. In the performance of his duties at ACS, Defendant Caputo utilized ACS computers. These computers were used in interstate commerce and communication.

13. On or about February 16, 2009, James E. Tatterson ("Tatterson") was employed by ACS as a Project Manager located in Florida. While Tatterson was to be employed initially until May 15, 2009, ACS and Tatterson engaged in numerous discussions about Tatterson becoming a full time ACS employee. Before that could occur, Tatterson resigned his employment with ACS on April 24, 2009.

14. Unknown to ACS, before Tatterson resigned his employment, he formed Americon, a company which directly competes with ACS. Americon was incorporated effective April 10, 2009, fourteen days before Tatterson resigned from ACS.

15. To assist in establishing his business, Tatterson has taken and/or used ACS' confidential, proprietary and trade secret information. Prior to starting Americon, at a time when he was being paid by ACS to promote the business and goodwill of ACS, Tatterson solicited ACS' customers to cease doing business with ACS and begin doing business with Americon.

16. Another former ACS employee, Donald L. Stratton ("Stratton"), resigned from ACS on or about September 21, 2009, and immediately began working for Americon. Stratton has taken and/or used ACS' confidential, proprietary and trade secret information in performing services for Americon.

17. Upon information and belief, Tatterson and Stratton, at the direction of and as agents of Americon, approached Caputo and solicited him to leave employment with ACS and accept a position with Americon.

18. On October 5, 2009, Caputo resigned from his employment with ACS and immediately began working for Americon.

19. Caputo has taken and/or used ACS' confidential, proprietary and trade secret information in performing services for Americon.

20. As Regional Manager, Caputo, individually, in concert with and as an agent of Americon, used his ACS computer to access and take confidential and proprietary business information of ACS, including, but not limited to, ACS's pricing methodology.

21. Prior to resigning from his employment, at a time when he was being paid by ACS to promote the business and goodwill of ACS, Caputo solicited ACS customers to cease doing business with ACS and begin doing business with Americon. For example, while still employed by ACS and bidding for a project located in Granite Falls, North Carolina on behalf of ACS, Caputo simultaneously bid on that project on behalf of Americon and used the pricing he established while employed by ACS to determine a lower price on behalf of Americon. But for Caputo's actions, ACS would have been awarded this project.

22. By using ACS's confidential and proprietary pricing information, Caputo and Americon were able to underbid ACS and be awarded the project.

23. Unless specifically stated otherwise, at all times described herein Defendants acted in concert and Defendant Caputo acted as agent of Defendant Americon.

## FIRST CAUSE OF ACTION
### Violation of the Computer Fraud and Abuse Act
### 18 U.S.C. § 1030, *et seq.*

24. ACS incorporates by reference the allegations contained in Paragraphs 1-23 as though restated here.

25. Defendant Caputo, acting individually, in concert with and as an agent of Americon, knowingly, with intent to defraud, and without authorization or by exceeding their authorization, accessed ACS computers used in interstate commerce and communication and

protected by 18 U.S.C. § 1030(e)(2)(B) and obtained information involving an interstate or foreign communication.

26. Defendant Caputo, acting individually, in concert with and as an agent of Americon, knowingly, with intent to defraud, and without authorization or by exceeding his authorization, accessed ACS computers and by means of such conduct furthered their intended fraud on ACS by obtaining confidential and proprietary information, including, but not limited to, ACS' pricing methodology, whose value exceeds $5,000 in any 1-year period.

27. Any access by Defendant Caputo, individually, in concert with or as an agent of Americon, to an ACS computer, computer system, server, or electronic device to retrieve information or documents to be used in competition with ACS was not authorized by ACS.

28. As a result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial, but believed to exceed $75,000.00.

29. Pursuant to 18 U.S.C. § 1030(g), Plaintiff is entitled to recover compensatory damages, injunctive relief, and any other equitable relief the Court deems appropriate.

30. Money damages alone will not, and cannot, compensate Plaintiff for the loss of business opportunities that it has suffered as a result of Defendants' wrongful actions. Those actions have and will in the future continue to harm Plaintiff and Plaintiff's business relationships. As a result of Defendants' wrongful actions, Plaintiff has and will have difficulty developing and maintaining customer and industry partner contacts and relationships, which will in turn negatively impact their ability to do business.

31. By continuing their wrongful conduct, Defendants have demonstrated their willingness to continue to engage in acts that violate 18 U.S.C. § 1030, *et seq*. The injury to Plaintiff is immediate and irreparable.

- 6 -
Case 3:09-cv-00464-RJC-DSC   Document 18   Filed 12/21/09   Page 6 of 20

32. Plaintiff asserts Defendants, unless enjoined, would continue to engage in the conduct alleged herein.

33. There is a likelihood Plaintiff will prevail on the merits of this action.

34. Should this Court grant injunctive relief to Plaintiff, the burden on Defendants would be slight compared to the injury to Plaintiff if it were not so granted.

35. No injury to Defendants would result from an order requiring them to comport their actions with the law.

36. The granting of an injunction will not violate the public interest. Indeed, injunctive relief would accomplish the objectives of 18 U.S.C. § 1030, *et seq*.

## SECOND CAUSE OF ACTION
**Breach of Non-Compete and Confidential Disclosure Agreements**

37. ACS incorporates by reference the allegations contained in Paragraphs 1-36 as though restated here.

38. Caputo executed a Non-Compete Agreement and Confidential Disclosure Agreements at the inception of his employment with ACS. At the time ACS and Caputo executed this Agreement, ACS intended that Caputo would relocate to his region of North Carolina and South Carolina and perform his duties primarily in those states. As the parties intended, Caputo relocated to North Carolina.

39. Paragraph 2 of Caputo's Non-Compete Agreement provides in pertinent part:

> During the Restricted Period, the Employee shall not, directly or indirectly, whether individually or as an officer, director, employee, consultant, partner, stockholder, individual proprietor, joint venturer, investor, lender, consultant or in any other capacity whatsoever: (a) solicit, divert or take away, or attempt to solicit, divert or take away, the business or patronage of any clients, customers or accounts, or prospective clients, customers or accounts, of the Company or (b) hire, retain (including as a consultant) or encourage to leave the employment of the Company any employee of the Company, or hire or retain (including as a consultant) any

former employee of the Company who has left the employment of the Company within one (1) year prior to such hiring or retention.

(Exhibit 1.)

40. Paragraph 2 of the Non-Compete Agreement executed by Caputo prohibits Caputo, during his employment with ACS and for two years thereafter, from soliciting or attempting to solicit any of ACS' customers or prospective customers on behalf of a competing business and soliciting or hiring any ACS' employees to work for a competing business.

41. Caputo acknowledged in Paragraph 3 of the Non-Compete Agreement he executed that the "non-solicitation obligations hereunder are essential to the protection of the Company's business as a consequence of the Employee's position." (Exhibit 1.)

42. By soliciting ACS' customers and prospective customers on behalf of Americon, both during his employment with ACS and thereafter during the Agreement's restricted time period, Caputo is in violation of Paragraph 2 of the Non-Compete Agreement he executed.

43. ACS has suffered and will continue to suffer irreparable harm if Caputo's violations of his Non-Compete Agreement are not enjoined.

44. The Confidential Disclosure Agreement executed by Caputo prohibits him from disclosing or using ACS' confidential and proprietary information for a purpose other than on behalf of ACS' business. ACS' confidential and proprietary information includes pricing and pricing methodologies and customer lists, which ACS regards as trade secrets.

45. Caputo has taken, disclosed and used ACS' confidential and proprietary information in his performance of services on behalf of Americon.

46. ACS has suffered and will continue to suffer irreparable harm if Caputo's violations of his Confidential Disclosure Agreements are not enjoined.

47. ACS is entitled to an injunction enforcing its Non-Compete and Confidential

Disclosure Agreements against Caputo.

48. Defendant Caputo is liable to ACS for breach of his Non-Compete and Confidential Disclosure Agreements and ACS has suffered damages in an amount to be proven at trial but believed to exceed $75,000.

### THIRD CAUSE OF ACTION
### Tortious Interference with Contract

49. ACS incorporates by reference the allegations contained in paragraphs 1-48 as though restated here.

50. At all times relevant, Americon was aware of Caputo's obligations to ACS imposed by his Non-Compete and Confidential Disclosure Agreements prior to Americon employing him.

51. Defendant Americon intentionally and without justification interfered with ACS' contractual relationships with Caputo causing ACS actual damages in an amount to be determined at trial.

52. The Defendants knew of ACS' relationships with ACS customers and have intentionally and without justification interfered with those relationships.

53. Defendants are liable to ACS for their tortious interference with ACS' contractual relationships and ACS has suffered damages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
### Tortious Interference with Prospective Advantage

54. ACS incorporates by reference the allegations contained in Paragraphs 1 through 53 as though restated here.

55. As described in greater detail above, Defendants knowingly and intentionally induced third parties to refrain from entering into a contract with Plaintiff. Specifically,

Defendants induced current and prospective customers of ACS to refrain from doing business with Plaintiff or entering into contracts with Plaintiff. This is but an example of Defendants' intentional and tortious interference with prospective advantage, and is provided only as an example among many of Defendants' wrongful, malicious conduct in inducing third parties to refrain from entering into contracts with Plaintiff.

56. There was no justification for Defendants' actions.

57. Defendants' actions were malicious, not in the legitimate exercise of the Defendants' own rights, and were designed to injure Plaintiff or gain some advantage at Plaintiff's expense.

58. The prospective contracts would have been entered into but for Defendants' interference and tortious actions.

59. As a result of Defendants' malicious, unjustified conduct in inducing third parties from entering into contracts with Plaintiff, Plaintiff suffered damages in an amount to be determined at trial but believed to exceed $75,000.00.

## FIFTH CAUSE OF ACTION
### Breach of Fiduciary Duty

60. ACS incorporates by reference the allegations contained in Paragraphs 1-59 as though restated here.

61. Defendant Caputo, in his role as Regional Manager for North and South Carolina ("Regional Manager") for ACS, owed a fiduciary duty to Plaintiff. Defendant Caputo's role as Regional Manager created a relationship of trust and confidence between him and Plaintiff. As Regional Manager, Defendant Caputo exercised substantial authority and control over the business activity, strategy, confidential information, pricing, bidding, marketing, customer contacts, and customer relationships of ACS' business within his geographic area. Defendant

Caputo was thus in a fiduciary role, as this authority and control subjected Plaintiff to the improper influence and domination of Caputo.

62. Defendant Caputo breached the fiduciary duties owed to Plaintiff both before and after his resignation by acting without good faith in: (a) violating his Non-Compete and Confidential Disclosure Agreements; (b) misappropriating, using, and distributing ACS's confidential, proprietary and trade secret information; and (c) soliciting ACS' current and prospective customers utilizing such confidential, proprietary and trade secret information.

63. As a proximate result of Defendant Caputo's breaches of the fiduciary duties he owed to ACS, Plaintiff has suffered damages in an amount to be determined at trial but believed to exceed $75,000.00.

### SIXTH CAUSE OF ACTION
### Violation of the Unfair and Deceptive Trade Practices Act
### N.C. Gen. Stat. § 75-1.1, *et seq.*

64. ACS incorporates by reference the allegations contained in Paragraphs 1-63 as though restated here.

65. Defendants' willful actions as set forth above, including but not limited, to Americon's inducement of Caputo to breach his Non-Compete and Confidential Disclosure Agreements, Caputo's intentional breach of his Non-Compete and Confidential Disclosure Agreements, Defendants' misappropriation, use, and distribution of ACS's confidential, proprietary and trade secret information, and Defendants' solicitation of ACS' current and prospective customers utilizing such confidential, proprietary and trade secret information, were unfair and deceptive. Defendants' actions were unethical, unscrupulous, and had a tendency to deceive.

66. Defendants' actions were immoral, unethical, oppressive, unscrupulous, or

- 11 -
Case 3:09-cv-00464-RJC-DSC   Document 18   Filed 12/21/09   Page 11 of 20

substantially injurious.

67. Defendants were, at all times relevant to this Complaint, engaged in or affecting commerce.

68. Defendants' unfair and deceptive trade practices proximately caused injury to Plaintiff well in excess of $75,000.

69. Pursuant to N.C. Gen. Stat. § 75-16.1, Plaintiff is entitled to reasonable attorneys' fees and costs.

70. Plaintiff's business has been injured as a direct and proximate result of Defendants' willful actions, and, pursuant to N.C. Gen. Stat. § 75-16, Plaintiff is entitled to treble damages as a result.

### SEVENTH CAUSE OF ACTION
### Misappropriation of Trade Secrets
### N.C. Gen. Stat. § 66-152, *et seq.*

71. ACS incorporates by reference the allegations contained in Paragraphs 1-70 as though restated here.

72. Defendant Caputo, individually, in concert with and as an agent of Americon, knew of Plaintiff's trade secrets, including but not limited to, ACS' pricing methodology.

73. Each of the trade secrets at issue derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering.

74. Defendant Caputo, individually, in concert with and as an agent of Americon, knew or should have known the actual or potential commercial value of the above-referenced trade secrets not being generally known or readily ascertainable through independent development or reverse engineering.

75. Plaintiff expended reasonable efforts under the circumstances to maintain the secrecy of the above-referenced trade secrets.

76. Defendant Caputo, individually, in concert with and as an agent of Americon, knew or should have known that Plaintiff expended reasonable efforts under the circumstances to maintain the secrecy of the above-referenced trade secrets.

77. As Regional Manager, Defendant Caputo, individually, in concert with and as an agent of Americon, had a specific opportunity to acquire the above-referenced trade secrets.

78. Defendant Caputo, individually, in concert with and as an agent of Americon, did not have the express or implied consent of ACS to acquire, use, or disclose these trade secrets to Americon or to current customers, prospective customers, or others in their performance of work for Americon.

79. Defendant Caputo, acting individually, in concert with and as an agent of Americon, did acquire and disclose the aforementioned trade secrets, and then Defendants used the above-referenced trade secrets without the express or implied consent or authority of Plaintiff.

80. Defendants used, and upon information and belief, continue to use the misappropriated trade secrets on behalf of Americon.

81. Pursuant to N.C. Gen. Stat. § 66-154, Plaintiff is entitled to recover from Defendants compensatory damages, unjust enrichment, punitive damages, injunctive relief, and any other equitable relief the Court deems appropriate.

82. Money damages alone will not, and cannot, compensate Plaintiff for the loss of business opportunities that it has suffered as a result of Defendants' wrongful actions. Those actions have and will in the future continue to harm Plaintiff and Plaintiff's business

- 13 -
Case 3:09-cv-00464-RJC-DSC   Document 18   Filed 12/21/09   Page 13 of 20

relationships. As a result of Defendants' wrongful actions, Plaintiff has and will have difficulty developing and maintaining client contacts and relationships, which will in turn impact its ability to do business.

83. By continuing their wrongful conduct, Defendants have demonstrated their willingness to continue to engage in acts that violate N.C. Gen. Stat. § 66-152, *et seq*. The injury to Plaintiff is immediate and irreparable.

84. Plaintiff asserts Defendants, unless enjoined, would continue to engage in the conduct alleged herein.

85. There is a likelihood Plaintiff will prevail on the merits of this action.

86. Should this Court grant injunctive relief to Plaintiff, the burden on Defendants would be slight compared to the injury to Plaintiff if it were not so granted.

87. No injury to Defendants would result from an order requiring them to comport their actions with the law.

88. The granting of an injunction will not violate the public interest. Indeed, injunctive relief would accomplish the objectives of N.C. Gen. Stat. § 66-152, *et seq*.

### EIGHTH CAUSE OF ACTION
### Unjust Enrichment

89. ACS incorporates by reference the allegations contained in Paragraphs 1-88 as though restated here.

90. Plaintiff paid Defendant Caputo for what it believed to be Caputo's work for ACS.

91. Plaintiff provided Defendant Caputo with resources to perform services for ACS.

92. A significant portion of the work performed by Defendant Caputo on Plaintiff's time and expense and while using Plaintiff's resources was actually performed for Americon.

93. Plaintiff reasonably expected Defendant Caputo had legitimately performed the services for which he was paid.

94. Defendant Caputo knew or had reason to know Plaintiff expected the money it paid Caputo in the form of salary or wages was for legitimate services.

95. Defendant Caputo voluntarily accepted and retained the money after having a realistic opportunity to either refuse it or return it to Plaintiff.

96. Defendant Americon voluntarily accepted and retained money for the work performed for it by Caputo at the expense and using the resources of Plaintiff.

97. In addition, on or around September 10, 2008, Caputo was assigned to investigate a potential project in Reno, Nevada on behalf of ACS.

98. Caputo arranged for his spouse to accompany him on this business trip.

99. When the business purpose of this trip ended, Caputo took his spouse on a vacation to San Francisco, California. Caputo charged this personal vacation to ACS in the form of a business expense, which ACS paid. Caputo was not authorized to use ACS funds to finance personal vacations.

100. On or about January 15, 2009, Caputo traveled to Las Vegas, Nevada to entertain ACS clients. Caputo once again took his spouse on this business trip.

101. During this business trip and without authorization, Caputo incurred significant unnecessary expenses, such as the cost of a suite as opposed to a conventional hotel room, for the purpose of his and his spouse's personal luxury and entertainment.

102. Caputo submitted his personal expenses as business expenses which ACS paid.

103. During the course of his employment with ACS, Caputo submitted personal expenses to ACS which he represented were business expenses and for which he was

reimbursed. Such personal expenses included groceries and family dinners. Caputo was reimbursed by ACS for these expenses, which were not authorized.

104. As a result, Defendants were unjustly enriched in an amount to be determined at trial but expected to exceed $75,000.

## NINTH CAUSE OF ACTION
### Civil Conspiracy

105. ACS incorporates by reference the allegations contained in Paragraphs 1-104 as though restated here.

106. Defendants worked in concert to breach Defendant Caputo's Non-Compete Agreement and Confidential Disclosure Agreements.

107. Defendants worked in concert to knowingly and intentionally interfere with ACS' contractual relationships and otherwise unlawfully harm ACS' business.

108. Defendants worked in concert to knowingly and intentionally induce third parties to refrain from entering into contracts with Plaintiff. Specifically, Defendants worked in concert to solicit the current and prospective ACS customers to stop doing business with ACS and start doing business with Americon.

109. Defendants worked in concert to misappropriate the trade secrets of ACS and use those misappropriated trade secrets in direct competition with Plaintiff.

110. Defendants acted in concert to willfully, unfairly and deceptively compete with ACS. Defendants' willful, unfair and deceptive actions include, but are not limited to, Defendants' efforts to solicit away current and prospective ACS customers using ACS' misappropriated trade secrets.

111. Defendants did in fact perform the above-described overt actions pursuant to their agreement.

- 16 -
Case 3:09-cv-00464-RJC-DSC   Document 18   Filed 12/21/09   Page 16 of 20

112. As described in detail, *supra*, Defendants' actions are unlawful or committed in an unlawful way.

113. Defendants' actions were malicious and willful and were performed pursuant to a common scheme.

114. Plaintiff lost business and business opportunities as a direct and proximate result of Defendants' actions.

115. Defendants' agreement resulted in injury to Plaintiff inflicted by the Defendants/co-conspirators in an amount to be determined at trial but believed to exceed $75,000.00.

## TENTH CAUSE OF ACTION
**Punitive Damages**
**N.C. Gen. Stat. § 1D-15**

116. ACS incorporates by reference the allegations contained in Paragraphs 1-115 as though restated here.

117. Plaintiff is entitled to compensatory damages as set forth above.

118. Defendants' actions involved malicious, willful and wanton conduct.

119. Defendants consciously and intentionally disregarded with indifference the rights of Plaintiff.

120. Defendants knew or should have known that their malicious, willful and wanton conduct was reasonably likely to result in injury, damage, and other harm to Plaintiff. Such actions amounted to more than gross negligence.

121. Defendants' fraudulent, malicious, willful and wanton conduct, as described herein, did proximately cause injury, damage and harm to Plaintiff.

122. Pursuant to N.C. Gen. Stat. § 1D-15, Plaintiff is therefore entitled to the recovery of punitive damages in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### Conversion

123. ACS incorporates by reference the allegations contained in Paragraphs 1-122 as though restated here.

124. During the course of his employment with ACS, Caputo was reimbursed for personal expenses that he characterized as business expenses. Caputo was not authorized to submit personal expenses for reimbursement.

125. ACS paid Caputo's false business expenses with its funds, to which it had a right of ownership.

126. As a result, Caputo has deprived ACS of the use of those funds for its own benefit.

127. ACS is entitled to recover the amounts reimbursed to Caputo which were personal as opposed to business expenses in an amount to be determined at trial.

**WHEREFORE,** ACS prays that this Court grant the following relief:

a. Temporary and/or permanent injunctive relief enjoining and restraining Defendant Caputo from violating his contractual obligations to ACS;

b. Actual, compensatory and punitive damages owed by all Defendants jointly and severally to the maximum extent allowable by law, but not less than $75,001.00;

c. Treble damages pursuant to N.C. Gen. Stat. § 751-16;

d. The costs and expenses of this action, including litigation expenses and attorneys' fees pursuant to applicable law; and

e. Such other further relief as this Court may deem just and proper.

This 21st day of December, 2009.

        Respectfully submitted


        /s/Steven J. Whitehead
        Steven J. Whitehead
        Georgia Bar No. 755480
        Marshall & Lueder
        Five Concourse Parkway, Suite 2600
        Atlanta, GA 30328
        Tel: (678) 514-2704
        Fax: (678) 514-2751
        E-mail: swhitehead@marshall-lueder.com

        Michael L. Wade, Jr.
        North Carolina Bar No. 33520
        Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
        201 S. College Street, Suite 2300
        Charlotte, NC 28244
        Tel: (704) 342-2588
        Fax: (704) 342-4379
        E-mail: michael.wade@ogletreedeakins.com

        *Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2009 a true and correct copy of the foregoing document entitled **AMENDED COMPLAINT** has been served via the United States District Court's CM/ECF system to all counsel of record.

/s/Steven J. Whitehead
Steven J. Whitehead
Georgia Bar No. 755480